IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| SHAUN CAPPS, As Personal Representative of the Estate of JOSEPH TYLER GOODSON, <br><br> Plaintiff, <br><br> v. <br><br> CHIEF LEN PRICE, OFFICER LAUREN JONES, OFFICER SEAN ALLEN, JOHN DOE 1, and JOHN DOES 2-20, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> CIVIL ACTION NO.: _____ <br><br><br> JURY TRIAL DEMANDED |

## COMPLAINT

**COMES NOW,** the Plaintiff, Shaun Capps, as Personal Representative of the Estate of Joseph Tyler Goodson, by and through the undersigned counsel and alleges the following:

## PRELIMINARY STATEMENT

This civil action arises from the death of Joseph Tyler Goodson ("Mr. Goodson") that occurred in Bibb County, Alabama. On or about December 3, 2023, officers employed by the Town of Woodstock Police Department, Town of West Blocton Police Department, and various agencies fired dozens of rounds, fatally wounding Mr. Goodson. Mr. Goodson was pronounced dead on December 5, 2023.

1

This civil action seeks redress for the violation of decedent's rights pursuant to 42 U.S.C. § 1983 and Alabama law.

## PARTIES

1. **Plaintiff Shaun Capps ("Plaintiff")** is a citizen of the United States, a citizen of the State of Alabama, and is at least nineteen (19) years of age. Shaun Capps is the duly appointed Personal Representative of the Estate of Joseph Tyler Goodson and brings this action in that fiduciary capacity pursuant to 42 U.S.C. § 1988(a) and Alabama law.

2. **Defendant Chief Len Price ("Defendant Price")** is a citizen of the United States, a citizen of the State of Alabama, and is at least nineteen (19) years of age. At all times relevant hereto, Defendant Price was the Chief of Police of the Town of Woodstock's Police Department and acted under the color of law.

3. **Defendant Lauren Jones ("Defendant Jones")** is a citizen of the United States, a citizen of the State of Alabama, and is at least nineteen (19) years of age. At all times relevant hereto, Defendant Jones was employed as police officer by the Town of Woodstock and acted under the color of law.

4. **Defendant Sean Allen ("Defendant Allen")** is a citizen of the United States, a citizen of the State of Alabama, and is at least nineteen (19) years of age. At all times relevant hereto, Defendant Allen was employed as police officer by the Town of West Blocton and acted under the color of law. Defendant Allen

completed the law enforcement academy only weeks before Mr. Goodson's death.

5. **Defendant John Doe 1 ("Defendant Doe 1")** is a citizen of the United States, a citizen of the State of Alabama, and is at least nineteen (19) years of age. At all times relevant hereto, Defendant Doe 1 was employed as police officer by the Town of Woodstock and acted under the color of law. Defendant Doe 1 was amongst the first responders to Mr. Goodson's residence, alongside Defendant Jones, on December 2, 2023.

6. **Defendants John Does 2–20** are yet-unidentified law enforcement officers, tactical personnel, or other agents who were present at the decedent's home on December 2-3, 2023, and who participated in the unlawful escalation, use of excessive force, and other constitutional violations described herein. Upon information and belief, each Doe Defendant was employed by the Town of Woodstock Police Department, Town of West Blocton Police Department, or another responding agency and acted under color of state law at all relevant times. These Defendants included officers who drew their weapons on Mr. Goodson and his family despite the absence of any threat; participated in establishing a militarized tactical posture around the residence; and discharged firearms toward and into an occupied home. Despite reasonable efforts, Plaintiff has not been

provided with any information enabling identification of the additional officers involved in the events of December 2–3, 2023.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. §§ 1343(a)(3)-(4), and 42 U.S.C. § 1988(a), as this action seeks redress for the violation of decedent's Fourth and Fourteenth Amendment rights under the Constitution of the United States, pursuant to 42 U.S.C. § 1983.

8. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), as they arise from the same case or controversy and are so related to Plaintiff's 42 U.S.C. § 1983 claims.

9. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events and omissions that give rise to Plaintiff's claims occurred within this Court's judicial district.

## FACTUAL ALLEGATIONS

### I. Mr. Goodson's Background

10. Joseph Tyler Goodson was thirty-two (32) years old at the time of his death.

11. He was well-known as a prominent character in the "S-Town" Podcast which detailed events in Woodstock, Alabama.

12. Mr. Goodson was a close friend to the central figure of the podcast.

13. The podcast had millions of listeners, making Mr. Goodson well-known in the community.

## II. Mr. Goodson's Shooting Death

14. On the evening of December 2, 2023, heavy police presence responded to a residence located in rural Bibb County, Alabama.

15. The property was owned by Mr. Goodson's mother – whose home was neighboring. Mr. Goodson, his wife, and their minor children lived at the residence.

16. Upon information and belief, Mr. Goodson's minor daughter called 911. Defendants Jones and Doe 1, who were both employed by Town of Woodstock, first responded to the scene.

17. Mr. Goodson's wife, Cami Salter, assured Defendants Jones and Doe 1 that there was no threat and the situation inside the home had been resolved. While standing outside of the home, she further explained that their two other minor children, who were approximately six and seven years old, were asleep inside.

18. Defendant Doe 1 threatened to detain Mrs. Salter if she did not be quiet and "get out of their way."

19. Despite the lack of any ongoing threat, Defendant Jones and Doe 1 from the Woodstock Police Department, refused to disengage and instead escalated their posture towards the Goodson family – including Mr. Goodson.

20. Defendants Jones and Doe 1 drew their weapons. Mr. Goodson was reasonably upset with this unjustified use of force.

21. Mr. Goodson retreated into his home.

22. At the time he retreated, Mr. Goodson was not under arrest and not otherwise free to leave. Further, Defendants Jones and Doe 1 did not have a warrant for Mr. Goodson's arrest, and he had committed no crime in their presence.

23. Defendants Jones and Doe 1 set up a "military-style" front at Mr. Goodson's residence with their guns drawn. They called for "all units" to respond to the scene.

24. Officers employed by the Woodstock Police Department, West Blocton Police Department, Brookwood Police Department, Vance Police Department, Lakeview Police Department, Bibb County Sheriff's Office, and Tuscaloosa County Sheriff's Office responded to the scene.

25. Amongst the responding officers was Defendant Allen, who was employed by the Town of West Blocton and who had graduated from the law enforcement academy only weeks prior.

26. Mr. Goodson and Defendants Jones, Allen, Doe 1, and Does 2-20 were at a standoff for several hours.

27. Upon information and belief, Defendant Jones stated that they would "shoot to kill."

28. At some point during the multi-hour standoff, Defendant Price was present at the scene and observed the actions taken by officers under his command, including their weapons drawn and escalating use of force.

29. Despite his presence, authority, and ability to supervise his officers, Defendant Price did not instruct officers to disengage, de-escalate, or refrain from using deadly force. He did not countermand the aggressive posture taken by officers, did not order a withdrawal, and did not intervene to prevent the unlawful discharge of dozens of rounds into an occupied home.

30. Defendant Price's presence at the scene and failure to intervene constituted approval, acquiescence, and ratification of the unconstitutional conduct that resulted in Mr. Goodson's death.

31. On December 3, 2023, at 1:39 AM, Mr. Goodson posted on his personal Facebook account "Police bout to shoot me down in my own yard."

32. Without justification, Defendant Allen fired his weapon first towards Mr. Goodson, striking him. Immediately after, Defendants Jones and Doe 1, and Does 2-20 fired several rounds in Mr. Goodson's direction. Mr. Goodson was struck by the gunfire.

33. Firing this volume of ammunition into an occupied home was objectively unreasonable and created a substantial likelihood of death or serious injury to everyone inside.

34. Along with striking Mr. Goodson, bullet holes riddled the home where his minor children slept and nearby vehicles.

35. To date, there has been no evidence showing that Mr. Goodson fired a weapon at either officer before or during the standoff.

36. After Mr. Goodson was shot, Mrs. Salter was escorted by an unnamed officer into her home with her children. When she entered the home, her children were sitting on a bed with another officer posted beside the bed with a large gun held in a "ready position" at his chest.

### III. Mr. Goodson's Death

37. Following the incident, Mr. Goodson was transported to University of Alabama at Birmingham ("UAB") Medical West in Bessemer, Alabama to be stabilized. He was then transported to UAB Hospital in Birmingham, Alabama by helicopter.

38. Mr. Goodson remained in critical condition the entire time.

39. Mr. Goodson remained in custody of the Woodstock Police Department while in the Hospital. Officer Jerry Lightsey, employed by the Town of Woodstock, remained at UAB until the trauma unit confirmed that Mr. Goodson would not survive his injuries.

40. Mr. Goodson never had any meaningful chance of recovery and was pronounced dead on December 5, 2023.

41. Mr. Goodson's immediate causes of death were brain death, intracranial hemorrhage, and gunshot to the head.

## CAUSES OF ACTION

## FEDERAL CLAIMS

### COUNT I: VIOLATION OF 42 U.S.C. § 1983 – EXCESSIVE FORCE

42. Plaintiff adopts and re-alleges paragraphs 1, 3-7, 9-27, and 31-41 of this Complaint as if fully set forth herein.

43. This Count is asserted against Defendants Jones, Allen, Doe 1, and Does 2-20.

44. The Fourth Amendment guarantees individuals the right to be free from unreasonable seizures and the use of excessive force by law enforcement officers.

45. When Defendants Jones and Doe 1 arrived at the Goodson residence, the situation inside the home had been fully resolved. Defendants Jones and Doe 1 were notified that no one was in danger and the earlier family dispute had ended. These Defendants lacked any reasonable basis to believe that Mr. Goodson posed an immediate threat to anyone's safety.

46. Despite the absence of any threat, Defendants Jones and Doe 1 drew their weapons and escalated the encounter without justification.

47. At the time these Defendants escalated their use of force, Mr. Goodson was not under arrest, no warrant existed for his arrest, and he had committed no crime in the presence of officers. Mr. Goodson retreated into his own home, where he had

9

a constitutional right to remain free from unreasonable seizure and police intrusion.

48. Defendants Jones and Doe 1 then positioned themselves in a militarized tactical posture, laying on the ground with firearms pointed at the residence, thereby creating and escalating a hostile environment without any lawful basis.

49. A standoff ensued for several hours, during which these Defendants had ample opportunity to reassess the situation, de-escalate, seek supervisory guidance, or employ non-lethal options. They failed to do so. Instead, they called for "all units" to respond. Defendants Allen and Does 2-20 were amongst the responders.

50. Without lawful justification, and without any immediate threat to themselves or others, Defendant Allen fired his weapon in Mr. Goodson's direction, striking him. Immediately after, Defendants Jones, Doe 1, and Does 2-20 fired numerous rounds at and into the residence.

51. Mr. Goodson was fatally wounded by the gunfire. Additionally, dozens of rounds were discharged toward an occupied home, riddling the residence and surrounding property with bullets.

52. Defendants Allen, Jones, Doe 1, and Does 2-20 fired their weapons even though Mr. Goodson had not fired or created any immediate threat of harm upon officers.

53. At the time of the shooting, Defendants Allen, Jones, Doe 1, and Does 2-20 knew or reasonably should have known that two minor children, approximately six and

seven years old, were asleep inside the home, making the use of deadly force particularly dangerous, reckless, and unreasonable.

54. The degree of force used by Defendants Allen, Jones, Doe 1, and Does 2-20 was grossly disproportionate, objectively unreasonable, and in violation of clearly established Fourth Amendment law.

55. As a direct and proximate result of these Defendants' unlawful use of deadly force, Mr. Goodson suffered catastrophic injuries that resulted in his death on December 5, 2023.

### COUNT II: VIOLATION OF 42 U.S.C. § 1983 – FAILURE TO INTERVENE

56. Plaintiff adopts and re-alleges paragraphs 1-2, 7, 9, 28-35, and 37-41 of this Complaint as if fully set forth herein.

57. This Count is asserted against Defendant Price.

58. An officer or supervisor who is present at the scene of a constitutional violation and who has the ability and opportunity to intervene but fails to do so is liable under 42 U.S.C. § 1983 for resulting injuries.

59. Defendant Price arrived on scene at a time when officers under his supervision—including Defendants Jones, Doe 1, and Does 2-20 (whether singular or plural)—had drawn their weapons on Mr. Goodson without lawful justification, despite repeated statements from Mrs. Salter that no one was in danger and that the earlier disagreement had resolved.

60. Defendant Price also knew or reasonably should have known that two minor children were asleep inside the residence and that firing into the home posed a grave and foreseeable risk of death or serious injury to everyone inside.

61. Defendant Price had the authority and the ability to direct officers to disengage, de-escalate, establish a perimeter only, use non-lethal options, or otherwise prevent the unlawful escalation of force.

62. Despite this, Defendant Price failed to take any action to prevent his officers from using excessive force against Mr. Goodson. He did not order officers to holster their weapons, reposition, withdraw, or refrain from using deadly force.

63. Defendant Price's failure to intervene directly and proximately contributed to the excessive force inflicted upon Mr. Goodson and ultimately to his death.

64. As a result of Defendant Price's unconstitutional inaction, Mr. Goodson suffered fatal injuries.

### COUNT III: VIOLATION OF 42 U.S.C. § 1983 – SUPERVISORY LIABILITY

65. Plaintiff adopts and re-alleges paragraphs 1-2, 7, 9, 28-35, and 37-41 of this Complaint as if fully set forth herein.

66. This Count is asserted against Defendant Price.

67. Under 42 U.S.C. § 1983, a supervisory official may be held liable when his own actions or omissions cause or contribute to a subordinate officer's violation of constitutional rights.

68. At all times relevant hereto, Defendant Price was the Chief of Police for the Town of Woodstock and exercised supervisory authority over Defendant Jones, Doe 1, and Does 2-20 (whether singular or plural).

69. Defendant Price arrived on scene during the extended standoff with Mr. Goodson and had actual knowledge of the escalating, unlawful, and unreasonable use of force by officers under his supervision.

70. Defendant Price knew or reasonably should have known that Mr. Goodson was not suspected of a violent crime, had not fired a weapon, and was inside a residence where two minor children were asleep.

71. Despite this knowledge, Defendant Price failed to provide supervision, guidance, restraint, or commands to protect Mr. Goodson's constitutional rights and to prevent the unlawful use of deadly force.

72. Defendant Price's omissions—including his failure to de-escalate, failure to instruct officers to holster weapons, failure to implement a coordinated response, and failure to prohibit the use of deadly force—constitute deliberate indifference to Mr. Goodson's constitutional rights.

73. Defendant Price's conduct constitutes a direct causal link in the chain of events leading to Mr. Goodson's death and was the moving force behind the violation of Mr. Goodson's Fourth Amendment rights.

74. As a direct and proximate result of Defendant Price's supervisory failures, omissions, and deliberate indifference, Mr. Goodson was subjected to unconstitutional deadly force and suffered fatal injuries.

## STATE CLAIMS

### COUNT IV: ASSAULT AND BATTERY

75. Plaintiff adopts and re-alleges paragraphs 1, 3-27, 31-38, and 40-41 of this Complaint as if fully set forth herein.

76. This Count is asserted against Defendants Jones, Allen, Doe 1 and Does 2-20.

77. Under Alabama law, an assault occurs when a defendant intentionally places another in reasonable apprehension of an immediate harmful or offensive contact. A battery occurs when a defendant intentionally makes harmful or offensive contact with another without legal justification.

78. Defendants Jones, Allen, Doe 1 and Doe 2-20 intentionally pointed their firearms towards Mr. Goodson without lawful cause. This conduct placed Mr. Goodson in reasonable and imminent fear of harmful and offensive contact.

79. Defendants Jones, Allen, Doe 1 and Does 2-20 intentionally fired their weapons toward and into the residence where Mr. Goodson was located, striking him and causing catastrophic injuries.

80. Defendants' acts of shooting Mr. Goodson constitute an intentional and unlawful battery.

81. As a direct and proximate result of Defendants' assault and battery, Mr. Goodson suffered pain, severe bodily injury, and ultimately death.

## COUNT V: WANTONNESS

82. Plaintiff adopts and re-alleges paragraphs 1-41 of this Complaint as if fully set forth herein.

83. This Count is asserted against all Defendants.

84. Under Alabama law, wantonness is the reckless or conscious disregard of the rights or safety of others.

85. Defendants Jones, Allen, Doe 1, and Does 2-20 acted wantonly, recklessly, and with conscious disregard for the safety and rights of Mr. Goodson when they escalated a resolved domestic situation into a lethal confrontation including:

   a. Drawing weapons on Mr. Goodson and his family despite being informed that no threat existed;

   b. Establishing a militarized and aggressive posture outside Mr. Goodson's residence without lawful justification or probable cause;

   c. Initiating and participating in a multi-hour standoff with no attempt at meaningful de-escalation;

   d. Firing dozens of rounds toward and into a home known to contain Mr. Goodson and two sleeping minor children; and

    e. Discharging deadly force despite the absence of any evidence that Mr. Goodson had fired at officers or posed an imminent threat of death or serious physical injury.

86. Defendant Price acted wantonly, recklessly, and with conscious disregard for the safety and rights of Mr. Goodson by being present on scene during the standoff and failing to order officers to holster weapons, disengage, de-escalate, or refrain from using deadly force, despite having supervisory authority, knowledge of the circumstances, and an opportunity to intervene.

87. Defendants' conduct demonstrates a reckless and conscious indifference to human life, particularly given the known presence of young children inside the home and the absence of any immediate threat.

88. As a direct and proximate result of the wanton acts and omissions of all Defendants, Mr. Goodson was shot, suffered catastrophic injuries, and ultimately died.

### COUNT VI: VIOLATION OF ALA. CODE § 6-5-410 – WRONGFUL DEATH

89. Plaintiff adopts and re-alleges paragraphs 1-41 of this Complaint as if fully set forth herein.

90. This Count is asserted against all Defendants.

91. Plaintiff brings this claim pursuant to Ala. Code § 6-5-410, which authorizes the Personal Representative of a decedent to recover damages for death caused by the wrongful act, omission, or negligence of another.

92. Defendants wrongfully caused the death of Mr. Goodson by engaging in conduct that was negligent, wanton, willful, and malicious.

93. Such wrongful actions and omissions committed by Defendants Jones, Allen, Doe 1 and Does 2-20 include, but are not limited to:

    a. Pointing firearms at Mr. Goodson without cause;

    b. Establishing a militarized standoff without probable cause, lawful authority, or reason to believe anyone was in danger;

    c. Firing dozens of rounds into an occupied home where Defendants knew, or reasonably should have known, that two minor children were asleep;

    d. Striking Mr. Goodson in the head with gunfire despite the absence of any evidence that he posed an imminent threat; and

    e. Failing to use, or even attempt to use, less-lethal alternatives.

94. Such wrongful actions and omissions committed by Defendant Price include arriving on the scene while these actions were unfolding and failing to intervene, supervise, countermand, or prevent the unconstitutional and reckless use of deadly force.

95. Defendants' wrongful acts and omissions were the direct and proximate cause of Mr. Goodson's fatal injuries and his death on December 5, 2023.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff respectfully requests this Honorable Court enter a judgment in his favor and against Defendants, jointly and severally, for the following relief:

a. Compensatory damages for emotional distress, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and special damages in an amount to be determined by a jury;

b. Nominal damages in an amount to be determined by a jury;

c. Punitive damages in an amount to be determined by a jury;

d. Reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988;

e. Pre-judgment and post-judgment interest as allowed by law; and

f. All other and further monetary and/or equitable relief as this Honorable Court may deem just and proper.

Submitted this 3rd day of December 2025.

*/s/ Kristen E. Gochett*
Leroy Maxwell, Jr.
Kristen E. Gochett
*Attorneys for Plaintiff*

**OF COUNSEL:**
**Maxwell & Tillman**
1820 3rd Avenue North, Suite 300
Birmingham, AL 35203
Phone: (205) 216-3304
Fax: (205) 409-4145
Email: maxwell@mxlawfirm.com
Email: kgochett@mxlawfirm.com

**DEFENDANTS SERVED VIA CERTIFIED MAIL AND/OR PRIVATE PROCESS SERVER.**

*/s/ Kristen E. Gochett*
OF COUNSEL